696 P.2d 868

STATE of Idaho, Plaintiff-Respondent,

v.

**Michael L. KAISER,
Defendant-Appellant.**

No. 15573.

Supreme Court of Idaho.

Jan. 31, 1985.

John C. Lynn (argued), of Lynn, Scott & Hackney, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BISTLINE, Justice.

Michael Kaiser was charged with first degree murder and possession of a firearm during the commission of a crime. After a six-day trial the jury returned verdicts finding Kaiser guilty of the lesser included offense of second degree murder, and guilty of carrying or displaying a firearm during the commission of the murder.

A sentence hearing was held at which arguments in mitigation and aggravation were heard. The court also reviewed the defendant's presentence report. Upon consideration of this record, the trial court imposed an indeterminate life sentence for second degree murder and a consecutive fifteen-year sentence for carrying or displaying a firearm during the commission of the murder. The trial judge made it clear that it was his understanding that the two sentences would be served consecutively:

> I think the sentencing in this case should be under the indeterminate sentence law. And I have in mind that a person sentenced for life imprisonment under the state would be eligible for parole in 10 years as I interpret the statute. I guess the Board of Corrections thinks that maybe they can get out at five, I don't know, but I think the law is clear that it is a ten-year minimum. And if the sentence was made for the maximum on the firearms, displaying the firearms statute that would be a 15-year maximum and I would think that if the sentence was passed under the indeterminate sentence law for 15 years on that one, that certainly even with that added on he'd be eligible for parole in five years on that sentence.
>
> So he could be eligible for parole if the maximum was passed under the indeterminate sentence law on both of those counts. In other words, he could be out

in 15 years if he behaves himself the way I see it.[1]

■ On appeal, the Court of Appeals affirmed in part and vacated in part the trial court. 106 Idaho 501, 681 P.2d 594 (1984). The Court of Appeals ruled that the indeterminate life sentence for second degree murder was not excessive. We agree with this decision of the Court of Appeals and affirm the holding that the indeterminate life sentence was not excessive. The Court of Appeals also held that the additional 15-year sentence for conviction of displaying a firearm could not be imposed to enhance the indeterminate life sentence. The reasons for this decision were set forth as follows:

> In spite of the mandatory language of § 19–2520, it is obvious that an enhanced sentence need not be given in every case covered by the statute. Taken literally, § 19–2520 would require a district judge to impose an additional term of not less than three years even where the underlying sentence might be the death penalty. This would be a meaningless application of the statute. It likewise would be a useless act to enhance a fixed life sentence where there is no possibility of parole.

> We also find it conceptually difficult to apply the enhancement provisions to a sentence calling for an indeterminate life imprisonment. A sentence to the custody of the Board of Corrections for a term not to exceed life terminates only upon the death of the inmate or by a pardon granted by the Commission of Pardons and Parole. A sentence is not terminated by parole. When an inmate is released on parole his sentence continues until it terminates by operation of law or until the Commission of Pardons and Parole grants a final discharge to a person on parole prior to the expiration of the sentences. I.C. § 20–233.

106 Idaho at 502, 681 P.2d at 595.

The Court of Appeals vacated the 15-year enhancement sentence and affirmed the indeterminate life sentence. Because we believe the Court of Appeals erred, we reverse that decision and reinstate the judgment of the district court.

The troublesome language is found in I.C. § 19–2520:

> Any person convicted of [one of the enumerated offenses] who displayed, used, threatened, or attempted to use a firearm ... while committing the crime, shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three (3) nor more than fifteen (15) years. Such additional sentence shall run consecutively to any other sentence imposed for the above cited crimes.

The legislative language clearly evidences its intent that involvement of a firearm mandates an additional prison *term* of three to fifteen years. The legislative purpose obviously was the increase of the pen-

---

1. In oral argument, counsel for the appellant indicated concern over the length of time one sentenced to an indeterminate life sentence must serve before he or she becomes parole-eligible:

> MS. STAHMAN: ... In evaluating the propriety of a sentence when there is an excessive sentence claim raised, one of the things we usually look at is when the individual is parole-eligible. I discovered this week that contrary to the beliefs of the sentencing court, and to the understanding of both counsel on appeal at the time that this case was argued, and apparently to all members of the court of appeals, that Kaiser was not eligible for parole after serving ten years, but the Parole Commission considered him eligible for parole after serving five years. ·This is because of a conflict in two provisions of I.C. § 20–

223. And in fact, Kaiser was considered for parole last month, in October 1984. He was passed over and he will be considered again in the future. I believe it will be April of 1987. This was also contrary to the sentencing court's belief. Although, I think, the sentencing court was a little up on myself, at least, because the sentencing judge said, I guess the board of corrections thinks that maybe they can get out at five. I don't know, but I think the law is clear that it is a ten-year minimum. While the Board for Pardons and Paroles considered him after the five-year service, not ten.

The meaning of I.C. § 20–223 is not at issue before this Court today; hence, we decline to state when Mr. Kaiser is parole-eligible. That is a decision which in the first instance is for the Idaho Commission for Pardons and Parole.

alty for commission of a crime using a firearm. Manifestly, the legislature inartfully referred to the additional penalty when it referred to "such *additional sentence*," in going on to provide that the additional time would be served consecutively to the term imposed for the crime committed. (Emphasis added). Had the legislature spoken of additional "term" instead of "additional sentence," its language would have more accurately patterned its apparent purpose.

Nevertheless, semantic distinctions of this nature cannot provide the foundation for undermining the clear intent of the legislature: persons who commit crimes using firearms are to be accorded greater punishment than those who do not. Any result which negates this intent would be improper.

The Court of Appeals noted that a literal application of I.C. § 19–2520 would even require imposition of an additional term to a fixed life sentence with no possibility of parole and to imposition of the death penalty. Likewise, the Court of Appeals found it "conceptually difficult to apply the enhancement provisions to a sentence calling for an indeterminate life imprisonment." *Kaiser, supra,* at 502, 681 P.2d at 595. It further correctly noted that an indeterminate life sentence terminates only upon the death of an inmate or by a pardon granted by the Commission of Pardons and Parole, I.C. § 20–223. Because the additional term imposed and added on for the commission of a crime with a firearm begins only after termination of the underlying sentence, the anomalous result observed by the Court of Appeals was that the firearm sentence would begin after either (1) death of the inmate, or (2) after a pardon is granted by the Commission, possibly years after the inmate had been released on parole.

Although the reasoning of the Court of Appeals is persuasive regarding fixed life and death penalty sentences, we are convinced that an indeterminate life sentence is a horse of a different color.

A person serving an indeterminate life sentence is eligible for parole under I.C. § 20–223 after serving ten years. *State v. Lloyd,* 104 Idaho 397, 400, 659 P.2d 151, 154 (Ct.App.1983); *State v. Wilde,* 104 Idaho 461, 462, 660 P.2d 73, 74 (Ct.App.1983). Unlike a fixed life or death penalty sentence, it is highly likely that an inmate with an indeterminate life sentence will be paroled or eventually discharged. Hence, there remains the opportunity within the defendant's lifetime to serve additional years imposed because of commission of a crime with a firearm, as is the will of the people through their legislature.

The decision of the Court of Appeals vacating the fifteen-year enhancement sentence of the trial court must be vacated. Although the reading of I.C. § 19–2520 by the Court of Appeals may be literally and technically correct, it defies the clear spirit of the enhancement statute. We believe the district court's interpretation of I.C. § 19–2520 was more in accord with the intention of the legislature: a defendant sentenced to an indeterminate life sentence plus an additional term for use of a firearm, said sentences to be served consecutively, must serve the indeterminate life sentence until paroled or pardoned, at which time he or she must immediately begin serving the firearm sentence until paroled, pardoned, or discharged.

The decision of the Court of Appeals is vacated and the judgment of the district court is reinstated.

DONALDSON, C.J., and SHEPARD, BAKES and HUNTLEY, JJ., concur.